UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephen P.B. Kranz, Donal R. Parks, and
Round Table Properties-MN L.L.C.,

Civil No. 06-3380 (PAM/JSM)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Paul Koenig; Michelle Koenig; Pamiko
Properties, LLC; and MarkLee Construction,
LLC;

Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss the Amended Complaint. For the reasons that follow, the Court grants in part and denies in part the Motion.

**BACKGROUND**

Plaintiffs Stephen P.B. Kranz and Donal R. Parks own Plaintiff Round Table Properties-MN L.L.C., a limited liability company established to hold and manage real estate properties in Minneapolis, Minnesota. Defendants Paul and Michelle Koenig control Defendants Pamiko Properties, LLC and MarkLee Construction, LLC.

**A.   Previous Litigation**

On January 28, 2005, Plaintiffs sued David and Sharon Kohlenberger and three companies owned by the Kohlenbergers: Dream Home Development, L.L.C.; DPK Properties, L.L.C.; and KOKO Property Management (collectively "Dream Home

Companies").[1] The Dream Home Companies constructed and managed numerous rental properties in Minneapolis. In the previous action, Plaintiffs alleged that the defendants misrepresented how much income six rental properties generated, thereby fraudulently inducing Plaintiffs to buy the properties.[2]

On April 3, 2006, Plaintiffs obtained a $75,000 confession of judgment against the Dream Home Companies. On June 1, 2006, Plaintiffs obtained an additional $1 million confession of judgment against the Dream Home Companies.

**B.  Current Litigation**

Plaintiffs commenced this action against the Koenigs, Pamiko Properties, and MarkLee Construction on September 18, 2006. According to the Amended Complaint, the Koenigs owned and operated numerous rental properties with the Kohlenbergers and the Dream Home Companies. (Am. Compl. ¶¶ 11-13.) In addition, the Koenigs and the Kohlenbergers purportedly executed a buyout agreement under which the Kohlenbergers agreed to purchase the Koenigs' interest in the Dream Home Companies. (Id. ¶ 14.) To raise money to fund the purchase of the interest, the entities allegedly sold rental properties and agreed that Paul Koenig would receive all profits from the sale of any rental property until David Kohlenberger had fully paid the Koenigs the amount agreed upon in the buyout

---

[1] Plaintiffs also sued an agent of the Dream Home Companies, a real estate broker, Edina Realty, Inc., and two agents of Edina Realty, Inc.

[2] In addition to the fraud claim, Plaintiffs sued for breach of contract, dishonored check, breach of fiduciary duty, negligence, unjust enrichment, unlawful trade practices, and deceptive trade practices.

agreement. (Id. ¶¶ 15-16.) Paul Koenig allegedly received $269,618.11 as proceeds from the sale of the properties to Plaintiffs. (Id. ¶ 21.)

After Plaintiffs discovered that the defendants in the previous litigation defrauded Plaintiffs, Plaintiffs allegedly informed Defendants that Plaintiffs intended to pursue all available legal and equitable relief. (Id. ¶ 24.) Thereafter, the Kohlenbergers and the Dream Home Companies purportedly transferred deeds to numerous properties to Defendants. (Id. ¶ 26.) Defendants allegedly paid no money for the properties, and the transfers were concealed from Plaintiffs. (Id. ¶ 29, 33.) Thereafter, Plaintiffs sold some of the properties to other investors for prices ranging between $250,000 and $300,000. (Id. ¶ 29.)

Plaintiffs allege that the transfers occurred as part of a "campaign to transfer assets to hinder, delay, and defraud Plaintiffs' efforts to pursue assets to satisfy the outstanding damages" arising from the fraud. (Id. ¶¶ 26-28.) They also allege that Defendants are using assets obtained from the Dream Home Companies for their own purposes instead of satisfying the judgments against the Dream Home Companies. (Id. ¶¶ 53-54.)

The Amended Complaint sets forth five claims: (1) unjust enrichment, (2) fraudulent transfers, (3) attachment, (4) illegal distributions, and (5) breach of contract. Defendants' Motion seeks dismissal of the first four claims.

**DISCUSSION**

**A.   Standard of Review**

For the purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha,

3

901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted).

**B.    Unjust Enrichment**

Count One asserts an unjust enrichment claim against Paul Koenig. In the previous action, Plaintiffs alleged that the defendants made fraudulent misrepresentations that induced Plaintiffs to purchase six rental properties. In this action, Plaintiffs allege that Paul Koenig received $269,618.11 in proceeds from those purchases based on the fraudulent misrepresentations. They submit that Paul Koenig should not be allowed to keep the proceeds. Defendants argue that the claim fails because Plaintiffs have not alleged that Paul Koenig participated in or knew of any of the wrongdoing alleged in the previous litigation.

"To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay." ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306 (Minn. 1996) (citation omitted). The Minnesota Supreme Court has explained that "the term unjustly could mean illegally or unlawfully." First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981) (internal quotations omitted). However, it is not limited to those circumstances. An unjust enrichment claim also applies when "the defendants' conduct in retaining the benefit is morally wrong." Schumacher v.

Schumacher, 627 N.W.2d 725, 729-30 (Minn. Ct. App. 2001) (citations omitted).

At issue is whether an unjust enrichment claim requires that a defendant commit a wrong—or whether it is sufficient for the defendant to benefit from another's wrong. At least two Minnesota Court of Appeals cases indicate that a plaintiff may maintain an unjust enrichment claim against the entity who benefits from the wrongdoing committed by another. See Wells Elec., Inc. v. Schaper, No. A06-420, 2006 WL 2807179, *6-*7 (Minn. Ct. App. Oct. 3, 2006); Honeywell/Alliance Techsys. Fed. Credit Union, No. C2-99-1194, 2000 WL 53875, *3 (Minn. Ct. App. Jan. 25, 2000). Indeed, the Honeywell court expressly recognized that there was no proof of fraud or illegal conduct on the part of the defendants, but nonetheless held that it would be inequitable for the defendants to keep the money. 2000 WL 53875, at *3.

Although the Court is not bound to follow either Wells Electric or Honeywell, the Court finds the reasoning of those cases persuasive. Moreover, Defendants have not cited any cases that stand for a contrary position. Although the Amended Complaint does not allege that Paul Koenig participated in the fraudulent scheme, it alleges that he received the proceeds from a sale based on fraud. These allegations sufficiently set forth a circumstance where it would be inequitable for Paul Koenig to retain the proceeds.

**B.     Fraudulent Transfers**

In Count Two, Plaintiffs seek recovery under the Minnesota Uniform Fraudulent Transfer Act, Minn. Stat. § 513.41 et seq. (MUFTA). The Court previously held that the MUFTA claim must comport with Federal Rule of Civil Procedure 9(b), and that the original Complaint was inadequately pled:

> First, the Complaint does not identify the source of the information for the paragraphs based on information and belief. Second, the Complaint contains intrinsic inconsistencies. For example, although the Complaint alleges that the Kohlenbergers transferred properties to the Koenigs, an exhibit attached to the Complaint reveals transfers of properties from the Koenigs to the Kohlenbergers. (Compl. Ex. D.) Third, the Complaint does not specify many material facts, such as when the allegedly fraudulent transfers occurred, the sale price and market value of the properties, and how Plaintiffs were damaged by the allegedly fraudulent transfers.

(Jan. 4, 2007 Order at 6.) Defendants argue that the Amended Complaint still does not meet the particularity requirement of Rule 9(b) because it fails to identify exactly who transferred each property to whom, the specific dates when each of the properties were transferred, the exact sale price and market value of the properties, and how Plaintiffs were damaged by the allegedly fraudulent transfers.

"In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). "Rule 9(b)'s particularity requirement demands a higher degree of notice than that required for other claims, and is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006)

(citations and internal quotations omitted). However, the requirement must be interpreted "in harmony with the principles of notice pleading." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001) (citations omitted). The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice. Id. Because one of the main purposes of Rule 9(b) is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations of fraud and deceit will not satisfy the Rule. Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995). Rather, a plaintiff must specify "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." United States ex rel. Joshi, 441 F.3d at 556 (citations omitted). Finally, where "allegations of fraud are . . . based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997) (citation omitted).

The Amended Complaint cures all deficiencies previously identified in the January 4, 2007 Order. First, it provides citations to David Kohlenberger's deposition for all allegations based on information and belief. Second, it cures the intrinsic inconsistency between the allegations in the original Complaint and its exhibit.[3] Finally, the Amended

---

[3] Defendants challenge the accuracy of the exhibit, noting that Plaintiffs merely changed a heading. Plaintiffs respond that the exhibit attached to the original Complaint contained a typographical error that was corrected for the Amended Complaint, so that the exhibit now correctly identifies the list of properties that the Kohlenbergers alleged transferred to

7

Complaint specifies that the allegedly fraudulent transfers occurred between November 2004 and March 2005; that Defendants did not pay any money for the transfer of the properties; that the market value of some of the properties ranged between $250,000 and $300,000; and that Plaintiffs were damaged because the fraudulent transfers resulted in the Dream Home Companies having essentially no assets, thereby precluding Plaintiffs from collecting on the confessions of judgment. These allegations provide sufficient details for Defendants to meaningfully respond to the MUFTA claim. Thus, the claim survives the Motion to Dismiss.

**C.    Attachment**

Plaintiffs allege that Defendants, acting with the Dream Home Companies and the Kohlenbergers, are disposing of property and rental income that is subject to the confessions of judgment. By doing so, Plaintiffs allege that Defendants are attempting to delay, defraud, and hinder Plaintiffs' ability to collect on the confessions of judgment. Plaintiffs seek an attachment order under either Minn. Stat. § 570.025 or Minn. Stat. § 570.026.

Defendants argue that the claim is based on allegations that Defendants had specific intent to defraud Plaintiffs, and that Plaintiffs have not met the particularity requirement. They rely on both Rule 9(b) and In re Marich Construction Co., 391 N.W.2d 899 (Minn. Ct. App. 1986), which stated "specific facts to support an allegation that the debtor has or is about to secret or dispose of property must be made or a writ of attachment may not be issued." Id. at 902 (citing Int'l State Bank v. Gamer, 281 N.W.2d 855, 859 (Minn. 1979).

---

Plaintiffs. At this juncture, the Court must construe all inferences in favor of Plaintiffs and therefore rejects Defendant's argument on this point.

The Court rejects this argument for two reasons. First, the particularity requirement of Rule 9(b) does not apply to the attachment claim. Attachment is a remedy for the fraudulent transfer claim—not a fraud claim in and of itself. Second, the procedural posture of Marich differs from the case at hand. In Marich, the plaintiff filed a motion for writ of attachment and submitted a supporting affidavit that merely mirrored the statutory language. Id. at 901. The Minnesota Court of Appeals held that the writ was improperly issued because the affidavit was insufficient. Id. at 902. Nowhere in Marich does the Court of Appeals challenge the adequacy of allegations in a complaint.

Defendants also argue that Plaintiffs must demonstrate the probability of success on the merits to obtain an attachment order. They cite Danheim Development, Inc. v. Mogler, 412 N.W.2d 398, 399 (Minn. Ct. App. 1987), which stated: "A preferential transfer of property alone, without an intent to defraud or delay creditors, is not sufficient to sustain an attachment." Defendants are correct that both § 570.025 and § 570.026 require a claimant to demonstrate the probability of success on the merits by establishing one of grounds listed in Minn. Stat. § 570.02. See Minn. Stat. § 570.025, subd. 2; Minn. Stat. § 570.026, subd. 3. However, Danheim is distinguishable. In that case, the trial court vacated a preliminary attachment order, after weighing all the evidence and finding that a conveyance preferring one creditor over another was not a basis for an attachment. 412 N.W.2d at 400. The Court of Appeals then reviewed the evidence and determined that the trial court did not err in vacating the order. Id. at 400-01. Whether the plaintiff in Danheim came forward with sufficient evidence to support its motion for a preliminary attachment order is a different

question from whether Plaintiffs can survive the Motion to Dismiss.  Because the Amended Complaint alleges sufficient facts to support an attachment order, the Court denies the Motion on this point.

**D.     Illegal Distributions**

Count Four alleges that the transfer of properties to MarkLee and Pamiko constitutes illegal distributions under Minn. Stat. Chapter 322B generally and Minn. Stat. § 322B.54 specifically, laws that limit the distributions of limited liability companies.  (Am. Compl. ¶ 62.)  Defendants argue that Plaintiffs lack standing to assert this claim.

Section 322B.54 specifies when the board of governors for a limited liability company may make a distribution to its members.  In particular, it requires that the board first determine whether the company can pay its debts in the ordinary course of business after making the distribution.  Minn. Stat. § 322B.54.  If a member receives a distribution in violation of § 322B.54, the member will be liable "to the limited liability company, its receiver or other person winding up its affairs."  Id. § 322B.55.

Plaintiffs do not allege to be any of these entities.  Nonetheless, they contend that Defendants may still be liable under Minn. Stat. § 322B.77, subdivision 4, which provides:

> Transferee liability. The transferee is liable for the debts, obligations, and liabilities of the transferor only to the extent provided in the contract or agreement between the transferee and the transferor or to the extent provided by this chapter or other statutes of this state. A disposition of all or substantially all of a limited liability company's properties and assets under this section is not considered to be a merger or a de facto merger pursuant to this chapter or otherwise. The transferee is not liable solely because it is deemed to be a continuation of the transferor.

Plaintiffs' reliance on § 322B.77 is misplaced. Although the provision may impose liability on Defendants, it does not confer standing for Plaintiffs. Thus, the illegal distribution claim fails as a matter of law.

**CONCLUSION**

The Amended Complaint sufficiently pleads unjust enrichment and fraudulent transfer claims, as well as the remedy of attachment. However, the Amended Complaint fails to allege standing for the illegal distribution claim. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss the Amended Complaint (Docket No. 17) is **GRANTED in part** and **DENIED in part**; and

2. Count Four of the Amended Complaint is **DISMISSED with prejudice**.

Dated: April 18, 2007

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge