UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephen P.B. Kranz, Donal R. Parks, and
Round Table Properties-MN L.L.C.,

Civil No. 06-3380 (PAM/JSM)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Paul Koenig; Michelle Koenig; Pamiko
Properties, LLC; and MarkLee Construction,
LLC;

Defendants.

---

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants in part and denies in part the Motion.

**BACKGROUND**

This is a dispute arising out of the sale of several low-income rental housing units in Minneapolis. Plaintiffs Stephen P.B. Kranz and Donal R. Parks own Plaintiff Round Table Properties-MN L.L.C. Defendants Paul and Michelle Koenig control Defendants Pamiko Properties, L.L.C. and MarkLee Construction, L.L.C. Not named in this lawsuit are the Koenigs' former business partners, David and Sharon Kohlenberger. Until about 15 months before the events giving rise to this litigation, the Koenigs and Kohlenbergers were partners in three real estate companies: Dream Home Development, L.L.C.; DPK Properties, L.L.C.; and KOKO Property Management (collectively the "Dream Home Companies"). The Dream Home Companies initially owned the real estate sold to Plaintiffs.

The Koenigs and Kohlenbergers incorporated the Dream Home Companies to design, build, and manage low-income (also called "section 8") housing units. In particular, the Koenigs and Kohlenbergers apparently believed that there was a lucrative market for six-bedroom low-income rental housing. The papers do not specify how many units the Dream Home Companies ultimately built.

After it became clear that the market for larger units was not profitable, the Koenigs and Kohlenbergers had a parting of the ways. Mr. Koenig resigned from the Dream Home Companies and later instituted a lawsuit against the Companies and the Kohlenbergers. That case settled, with the Dream Home Companies pledging more than $1 million to Koenig. To satisfy that debt, the Dream Home Companies endeavored to secure buyers for the rental units.

To that end, the Companies listed various properties with Edina Realty, Inc. ("Edina Realty"). A broker for Edina Realty contacted Plaintiff Kranz about the opportunity to purchase six of the rental units. Kranz in turn contacted Plaintiff Parks, who was also interested in investing in real estate. The two men preliminarily agreed to purchase the properties and formed Plaintiff Round Table Properties-MN L.L.C., a limited liability company established to hold and manage the properties. According to Plaintiffs, representatives of Edina Realty and of the Dream Home Companies repeatedly assured Plaintiffs that the rent on the units was more than that available through section 8 alone because various entities in Minnesota provided subsidies to the renters of the units. Plaintiffs allege that after closing on the units, they discovered that no such rent subsidies existed, thus

limiting the rent to that available under the section 8 program, which was not enough to make the units profitable.

**A.      Previous Litigation**

On January 28, 2005, Plaintiffs sued David and Sharon Kohlenberger and the Dream Home Companies.[1]  In that case, Plaintiffs alleged that the defendants misrepresented how much income the six rental properties generated, thereby fraudulently inducing Plaintiffs to buy the properties.  On April 3, 2006, Plaintiffs obtained a $75,000 confession of judgment against the Dream Home Companies.  On June 1, 2006, Plaintiffs obtained an additional $1 million confession of judgment against the Dream Home Companies.  The Companies are now insolvent and Plaintiffs have been unable to recover on the confessions of judgment.

**B.      Current Litigation**

On August 18, 2006, Plaintiffs commenced this action against the Koenigs and two companies controlled by the Koenigs, Pamiko Properties and MarkLee Construction.  The Complaint alleges that the Kohlenbergers and the Dream Home Companies fraudulently transferred assets to the Koenigs and their companies in an attempt to shield those assets from the judgments entered in the previous litigation.

Specifically, Plaintiffs allege that the Dream Home Companies transferred 17 rental units to Defendants and that Defendants are using the properties and the proceeds from the properties for their own purposes instead of paying the claims of Plaintiffs against the Dream

---

[1] Plaintiffs also sued an agent of the Dream Home Companies, Edina Realty, and two agents of Edina Realty.  The Hon. Richard H. Kyle of this Court presided over that case.

Home Companies. Plaintiffs also allege that Paul Koenig received almost $270,000 as proceeds from the sale of the properties to Plaintiffs.

At issue in the Motion for Summary Judgment are the remaining claims of Plaintiffs' Amended Complaint, for prejudgment attachment, fraudulent transfers, unjust enrichment, and breach of contract.

**DISCUSSION**

**A.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.     Unjust Enrichment**

"To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay." ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306 (Minn. 1996) (citation omitted).  An unjust enrichment claim may lie when "the defendants' conduct in retaining the benefit is morally wrong." Schumacher v. Schumacher, 627 N.W.2d 725, 729-30 (Minn. Ct. App. 2001) (citations omitted).  As the Court held in the Order on the Motion to Dismiss, a plaintiff may maintain an unjust enrichment claim against the entity who benefits from wrongdoing committed by another without proof of fraud or illegal conduct on the part of the entity.  Honeywell/Alliance Techsys. Fed. Credit Union v. Buckhalton, No. C2-99-1194, 2000 WL 53875, at *3 (Minn. Ct. App. Jan. 25, 2000); see also Wells Elec., Inc. v. Schaper, No. A06-420, 2006 WL 2807179, at *6-*7 (Minn. Ct. App. Oct. 3, 2006).

Defendants argue that Plaintiffs have failed to raise a genuine issue of material fact as to two elements of their unjust enrichment claims.  First, Defendants assert that Plaintiffs have no evidence that Koenig benefitted from the allegedly fraudulent misrepresentations that led Plaintiffs to purchase the rental properties from the Dream Home Companies. Second, Defendants contend that Plaintiffs' underlying fraudulent misrepresentation claim fails because Plaintiffs' reliance on the allegedly fraudulent representations was unreasonable as a matter of law.

As evidence that Koenig benefitted from the Plaintiffs' purchase of the properties,

Plaintiffs point to the HUD-1 statements[2] from the sale of the properties that each list a "payoff to Paul Koenig" in amounts ranging from just over $28,000 to more than $57,000. (Pramas Aff. Ex. 11.) In total, Plaintiffs contend that Koenig received almost $270,000 from the sale of the six properties. Koenig denies receiving any funds from the purchase of the properties. (Koenig Aff. ¶ 2.)

This is a factual dispute that is not amenable to resolution on a motion for summary judgment. Plaintiffs have come forward with evidence that purports to show that Koenig was enriched by the Plaintiffs' purchase of the properties. Defendants deny that Koenig was so enriched. This evidence creates a dispute as to a material issue of fact. Thus, Defendants' Motion on this basis must be denied.

Similarly, the issue of whether Plaintiffs' reliance on the allegedly fraudulent misrepresentations was reasonable is usually a question of fact. See Hoyt Props., Inc. v. Production Research Group, L.L.C., 736 N.W.2d 313, 321 (Minn. 2007). "In defending a motion for summary judgment, the nonmoving party must come forward with some evidence demonstrating a genuine issue as to the actual reliance and the reasonableness of the reliance." Id. (citing Nicollet Restoration, Inc. v. City of St. Paul, 533 N.W.2d 845, 848 (Minn. 1995)). Defendants claim that because Plaintiffs "red flagged" the subsidy issue, they knew or should have known before closing that there were no subsidies available for the properties they were purchasing. (Defs.' Supp. Mem. at 19.) Plaintiffs point to the written

---

[2] A HUD-1 statement appears to be a closing document specific to section 8 housing.

documentation provided to them before closing, all of which consistently noted the existence and amount of the subsidies.

Although a jury may find that Plaintiffs' reliance on the representations regarding the rent subsidies was unreasonable, on the record as it now stands the Court may not make that finding. The Minnesota Supreme Court has made clear that the question of reasonable reliance is a question of fact for the jury "unless the record reflects a complete failure of proof." Hoyt Props., Inc., 736 N.W.2d at 321. There is not a complete failure of proof on this issue here. Summary judgment is not appropriate on Plaintiffs' claim for unjust enrichment.

**B.    Fraudulent Transfers**

Plaintiffs bring a claim under the Minnesota Uniform Fraudulent Transfer Act, Minn. Stat. § 513.41 et seq. ("MUFTA"). Part of Defendants' Motion as to this claim appears to be a restatement of Defendants' arguments on the Motion to Dismiss, that the claim is not pled with sufficient particularity. However, the Court previously determined that Plaintiffs' MUFTA claim complies with the requirements of Rule 9(b), and thus Defendants' complaints about the lack of particularity are unavailing.

MUFTA prohibits the transfer of assets of a debtor "with actual intent to hinder, delay, or defraud any creditor of the debtor." Id. § 513.44(A)(1). Under MUFTA, the creditor may recover the value of the transferred asset against "the first transferee of the asset or the person for whose benefit the transfer was made." Id. § 513.44(B)(1). It is the creditor's burden, on a motion for summary judgment, to come forward with evidence that shows that the transfer

was fraudulent within the meaning of the statute.

Here, Plaintiffs' contend that the Dream Home Companies' sale of 17 properties to Defendants was a fraudulent transfer, intended to deprive Plaintiffs of their confession of judgment against the Dream Home Companies. Defendants contend that the MUFTA claim fails because Plaintiffs have no evidence that there were any transfers made to the Koenigs or to Pamlico Properties, and that in any event there is no evidence that the transfers to Defendants were fraudulent.

The record shows that the 17 properties at issue were transferred to Defendant MarkLee Construction. There is ample evidence in the record that the Koenigs control MarkLee. Thus, there is evidence of a transfer to Defendants.

Further, Plaintiffs have come forward with evidence from which a jury could conclude that the transfers were fraudulent. In determining the intent to defraud, the Minnesota Legislature has specified several items that might be evidence of this intent, including: whether the transfer was made to an insider, id. § 513.44(b)(1); whether before the transfer, the debtor had been sued or threatened with suit, id. § 513.44(b)(4); whether the value of the asset was reasonably equivalent to the amount the debtor received, id. § 513.44(b)(8); and whether the debtor was insolvent or became insolvent shortly after the transfer, id. § 513.44(b)(9).

Plaintiffs have come forward with evidence that, if believed, shows that Koenig was

an insider of the Dream Home Companies both before and at the time of the transfers.[3] There is no dispute that the Dream Home Companies became insolvent after the transfers. Further, a jury could conclude from Plaintiffs' evidence that Plaintiffs had threatened to sue the Dream Home Companies shortly before the alleged fraudulent transfer, and that the value of the properties transferred was not reasonably equivalent to the amount the debtor received from the transfer. Plaintiffs have succeeding in raising a genuine issue of material fact on their MUFTA claim.

## C.     Breach of Contract

Defendants seek summary judgment on Plaintiffs' claim for breach of contract. Defendants concede that there was a contract and argue that Defendants' counterclaim as to whether Plaintiffs breached the contract must be resolved at trial. It is unclear on what basis Defendants seek summary judgment on Plaintiffs' claim for breach, although it appears that

---

[3] Defendants apparently are confused as to the hearsay rules and the application of those rules to the summary judgment process. Defendants argue that the depositions of anyone not a party to the case is inadmissible hearsay because there is no showing that the deponents are unavailable. See Fed. R. Evid. 801(b)(1) and (c). These rules apply to the admission of evidence at trial, not to the consideration of evidence on a motion for summary judgment. The Court knows of no way to present the testimony of any witness in the context of a motion for summary judgment other than through deposition or affidavit. Whether those depositions are ultimately inadmissible at trial as hearsay is simply of no moment in the consideration of a motion for summary judgment. In addition, Defendants argue that some of Plaintiffs' evidence on this point is inadmissible because it involves settlement discussions. See id. 408(a)(2). However, the settlement at issue was a settlement between Defendants and the Kohlenbergers and did not involve the claims in this lawsuit. Thus, it is not subject to the evidentiary prohibition on the admission of settlement discussions. Id. ("conduct or statement made in compromise negotiations regarding the claim"at issue is not admissible) (emphasis added).

Defendants are arguing that Plaintiffs cannot prove that they performed their part of the bargain.

The contract at issue is the settlement agreement between Plaintiffs, the Dream Home Companies, and the Kohlenbergers settling Plaintiffs' claims in the prior litigation. For reasons that are not entirely clear, the Koenigs, MarkLee, and Pamlico were also parties to the settlement agreement. The agreement provided that both the defendants in the previous litigation and Defendants here would find buyers for the six properties Plaintiffs purchased, and that Plaintiffs would receive a profit of $240,000 per property. (Pierce Aff. Ex. E. at 5-6.) Plaintiffs agreed, among other things, to secure waiver of prepayment penalties from the banks holding the mortgages on the properties, and to cooperate in the sales by providing all necessary documentation. (Id. at 6-8.) Defendants claim that they honored their obligations under the settlement agreement.

For their part, Plaintiffs argue that there was an enforceable contract and that there is no dispute that the sales contemplated by the contract did not occur. However, Plaintiffs point to no evidence in the record that Defendants breached the contract. Plaintiffs seem to rely on logical inference for their opposition to Defendants' Motion on this point: there was a contract and the contract was not performed, therefore Defendants breached.

While it is Plaintiffs' burden to oppose the Motion for Summary Judgment with evidence from the record, it is initially Defendants' burden to "properly support" their Motion. Defendants' failure to fully explain and support the Motion with respect to the breach of contract claim excuses Plaintiffs' failure to adequately respond. Defendants'

10

Motion on this point is denied.

**D.   Attachment**

In May 2007, the Court denied Plaintiffs' Motion for Prejudgment Attachment, finding that Plaintiffs had failed to show that they were entitled to an attachment under the relevant Minnesota statute.  See Minn. Stat. § 570.02(1)-(2).  Defendants now argue that the Court's Order mandates the entry of summary judgment on the claim for attachment because Plaintiffs have "no evidence whatsoever that can support any of [the statutory] elements" for prejudgment attachment.  (Defs.' Supp. Mem. at 26.)

In opposition, Plaintiffs point to documents that show that Defendant MarkLee Construction is in dire financial straits, such that MarkLee would be unable to satisfy a money judgment against it.  However, the cases Plaintiffs cite for the proposition that a claim for prejudgment attachment is cognizable when a defendant is potentially unable to satisfy a judgment did not involve prejudgment attachment claims, but rather involved motions for preliminary injunction.  (Pls.' Opp'n Mem. at 24-25.)

Plaintiffs have come forward with no new evidence on the statutory elements for prejudgment attachment.  Defendants are entitled to summary judgment on this claim.

**CONCLUSION**

Much of Defendants' Motion depends on the weighing of evidence.  Although Defendants dispute the import of Plaintiffs' evidence and the weight that evidence should receive, these are not appropriate inquiries on a motion for summary judgment.  Plaintiffs have succeeded in raising a genuine issue of material fact as to three of their claims.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Docket No. 55) is **GRANTED in part** and **DENIED in part**; and

2. Count 3 of the Amended Complaint is **DISMISSED with prejudice**.


Dated:   December 20, 2007

                                              s/Paul A. Magnuson
                                              Paul A. Magnuson
                                              United States District Court Judge